OPINION
Defendant-appellant Carlos Fabre appeals the March 5, 1998 Final Divorce Decree and Judgment Entry entered by the Stark County Court of Common Pleas, Domestic Relations Division, ordering him to pay $2,660/month for child support with $1,000/month of that amount to be paid into trust for the benefit of his minor child; ordering him to pay $10,000/month in spousal support; ordering him to pay plaintiff-appellee Yadira C. Fabre $49,732 as a distributive award; and ordering him to pay marital debts and appellee's attorney fees. Appellant also appeals the June 23, 1998 Judgment Entry finding him guilty of contempt without providing him with a meaningful opportunity to purge the contempt.
 STATEMENT OF THE FACTS AND CASE
Appellant and appellee were married on July 4, 1971. Four children were born as issue of said union, one of whom remains a minor, Eduard (DOB 4/4/81).
Prior to the parties' marriage, appellee obtained a medical degree in Columbia. She worked as a general physician, but gave up her practice during the 1970's to stay at home with the parties' four children. Appellee let her licensure lapse.
Prior to immigrating to this country, appellant obtained a medical degree in Columbia. He completed his residency and received specialized training in the United States. In 1976, appellant was board certified in internal medicine. In 1977, he became board certified in cardiovascular disease. Appellant is currently a cardiologist. He owns a 1/3 interest in Ohio Heart Care, Inc. and United Health Network, Ltd.
On November 6, 1996, appellee filed a complaint for divorce in the Stark County Court of Common Pleas, Domestic Relations Division. On December 16, 1997, the trial court conducted a trial of the contested issues, specifically, the division of certain marital property, the amount and duration of spousal support, and the child support obligation.
Via Final Divorce Decree and Judgment Entry dated March 5, 1998, the trial court granted a divorce to the parties. The trial court designated appellee as the residential parent and legal custodian of Eduard, subject to companionship. The court ordered appellant to pay the sum of $2,660/month for child support. Of that amount, $1,000/month was ordered to be paid into a trust "to be distributed to Eduard for reasonable living expenses while attending post-secondary education courses leading to a degree." March 6, 1998 Final Divorce Decree and Judgment Entry at 11.
Appellee received marital property totaling $782,270, which included a distributive award of $49,732 to equalize the property settlement. Appellant received marital property totaling $782,271. The trial court ordered appellant to pay appellee $10,000/month, for a period of 102 months, as and for spousal support. The trial court reserved jurisdiction over the issue. In addition, appellant was ordered to pay appellee's attorney fees in the amount of $19,679 within 90 days of the filing of the order. The trial court further ordered appellant pay marital debts in excess of $40,000.
Appellant filed a timely notice of appeal from the final divorce decree, asserting as error:
 I. THE TRIAL COURT ERRED IN FAILING TO COMPLETE A CHILD SUPPORT CALCULATION WORKSHEET AND TO INCLUDE THE WORKSHEET IN THE RECORD PURSUANT TO O.R.C. 3113.215(E).
 II. THE COURT ABUSED ITS DISCRETION IN ORDERING PAYMENT OF $2,660 PER MONTH CHILD SUPPORT WHEN THE COURT FOUND THAT THIS AMOUNT WAS PROBABLY "EXCESSIVE FOR [THE CHILD'S] MONTHLY NEEDS AT THIS TIME" AND WHERE THE COURT ORDERED $1,000 PER MONTH OF THE CHILD SUPPORT AWARD TO BE DEPOSITED INTO A TRUST FOR THE CHILD TO PAY FUTURE LIVING EXPENSES FOR A PERIOD BEYOND THE JURISDICTION OF THE COURT.
 III. THE COURT ABUSED ITS DISCRETION IN ORDERING THE APPELLANT TO PAY SPOUSAL SUPPORT OF $10,000 PER MONTH WHEN THAT WAS NOT REASONABLE OR APPROPRIATE.
 IV. THE COURT ABUSED ITS DISCRETION IN ORDERING A DISTRIBUTIVE PAYMENT OF $49,732 TO BE PAID FROM THE APPELLANT'S CURRENT INCOME WHEN THE OFFSETTING PROPERTY JUSTIFYING SUCH AWARD IS NOT LIQUID.
 V. THE COURT ABUSED ITS DISCRETION IN AWARDING ALL OF THE LIABILITIES OF THE MARRIAGE TO THE APPELLANT AND IN AWARDING ATTORNEY'S FEE FOR THE APPELLEE WHEN THERE WAS A SUBSTANTIAL DISTRIBUTION OF PROPERTY WHICH THE APPELLEE COULD HAVE PAID THOSE EXPENSES.
On May 21, 1998, appellee filed a motion and affidavit asking the trial court to find appellant in contempt for failing to pay his total child support and spousal support obligations. On June 12, 1998, appellee filed an amended motion and affidavit asserting not only had appellant failed to pay his child support and spousal support obligations, but also failed to pay appellee's attorney fees. The trial court scheduled a show cause hearing for June 23, 1998.
After hearing evidence, the trial court found appellant was in arrears $15,650 with respect to his support obligations, had not paid any monies into Eduard's trust, and had "deliberately and willfully made choices to expend available funds without any regard or concern for his court ordered obligations." June 23, 1998 Judgment Entry. The trial court found appellant guilty of wilful contempt and sentenced him to 30 days in the Stark County Jail.
The trial court ordered appellant taken into immediate custody. Appellant made a motion for stay pending appeal. Because the trial court would not rule upon the motion until appellant spent a night in jail, this Court granted an emergency stay and ordered appellant released.
From the June 23, 1998 Judgment Entry appellant also appeals, raising as error:
 VI. THE COURT'S FINDING OF WILLFUL CONTEMPT WAS CLEARLY ERRONEOUS.
 VII. THE COURT ERRED IN SENTENCING THE APPELLANT TO 30 DAYS IN JAIL WITHOUT GIVING HIM A MEANINGFUL OPPORTUNITY TO PURGE THE CONTEMPT.
Any other facts relevant to our discussion of appellant's assignments of error shall be contained therein.
 I
In his first assignment of error, appellant maintains the trial court erred in failing to complete a child support calculation worksheet and in failing to include said worksheet in the record as required by R.C. 3113.215(E).
R.C. 3113.215(B)(1) requires a calculation of the amount of an obligor's child support obligation must be made "in accordance with" the basic child support schedule set forth in R.C.3113.215(D), the applicable worksheet in R.C. 3113.215(E) or (F), and other requirements of the law. R.C. 3113.215(E) and (F) both provide a sample or "model" worksheet and each provision directs the court to "use a worksheet that is identical in content and form" to the applicable model provided. Interpreting these provisions, the Ohio Supreme Court has held a child support computation worksheet as provided for in R.C. 3113.215 must actually be completed and made a part of the trial court's record.Marker v. Grimm (1992), 65 Ohio St.3d 139, syllabus one.
Appellee concedes the trial court failed to include a child support calculation worksheet in the record and such failure is reversible error. Upon review of the record, we find the trial court failed to include a worksheet. Accordingly, we sustain appellant's first assignment of error. The portion of the final divorce decree and judgment entry dealing with appellant's child support obligations is reversed and remanded to the trial court for redetermination of the support obligation.
 II
In his second assignment of error, appellant contends the trial court abused its discretion in ordering $1,000/month of the child support award to be placed into trust for the minor child to be used for future living expenses.
Although we find appellant's argument relative to the propriety of the trial court's ordering a portion of his child support obligation into trust suggestive of the fact the overall award of $2660/month may be unreasonable, and although we find such argument presents an interesting issue, in light of our decision to reverse the trial court's order relative to child support, appellant's second assignment of error is premature. We believe the parties will have an opportunity to assert their arguments with respect to this issue to the trial court upon remand.
Accordingly, appellant's second assignment of error is overruled as premature.
 III
In his third assignment of error, appellant asserts the trial court abused its discretion in awarding spousal support in the amount of $10,000/month.
A review of a trial court's decision relative to spousal support is governed by an abuse of discretion standard. Cherry v.Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case subjudice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. Pursuant to R.C. 3105.18(C)(1), a trial court must consider certain factors in making determinations of spousal support:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties, from all sources * * *;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
Further, trial courts are governed by the standards and guidelines imposed by the Ohio Supreme Court in Kunkle v. Kunkle
(1990), 51 Ohio St.3d 64, paragraph one of the syllabus:
 Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
The trial court made the following findings relative to the issue of spousal support:
a. The income of the parties, from all sources, * * *
 [Appellant's] income during the last several years has been as follows:
 Adjusted Gross Net Income Income After Taxes
1992 392,479 279,135
1993 331,039 229,868
1994 311,284 214,727
1995 375,636 251,266
1996 314,909 220,654
 The Court has also considered the effect of the property division made in this order and the distributions * * * [Appellee] has no earned income at this time.
 b. The relative earning abilities of the parties;
 The Court finds that [appellant's] income earning ability has been stable for the last several years and will continue to be so in the foreseeable future. [Appellee's] earning ability is relatively insignificant in this case.
 c. The ages and the physical, mental, and emotional conditions of the parties;
 [Appellee] is 53 years of age and in good health physically, mentally and emotionally. [Appellant] is 54 years old and is in good health physically, mentally and emotionally.
* * *
e. The duration of the marriage;
 * * * to the date of this judgment entry the parties were married three hundred and twenty months.
* * *
 g. The standard of living of the parties established during the marriage;
 * * * the parties have established a financially comfortable and luxurious lifestyle during their marriage.
 h. The relative extent of education of the parties;
 * * * [appellee] obtained her medical degree in Bogota', Columbia prior to immigrating to the United States. She was unable to complete and [sic] internship in her specialty because of the birth of the parties' first child. She later worked as a general physician before giving up her practice in the early 1970's to stay at home with the four children of the marriage. However, [appellee] who was once licensed as a physician has lost her licensure due to the sacrifices she made for the benefit of the family in raising the parties' children and in furthering [appellant's] own medical career throughout the years of their marriage.
 * * * [appellant] also obtained his medical degree in Columbia prior to his immigration to the United States. [Appellant] completed an internship and received various specialized training in the United States. [Appellant] also became Board Certified in Internal Medicine in 1976 and in cardiovascular disease in 1977. [Appellant] has been continuously and actively involved in the practice of medicine and has maintained his licensure through all required training, seminars and continuing education as well as by practical experience.
 While both parties have received professional education in the medical field, the relative effect at this point of the parties' education reveals that the value of [appellee's] education at this point is insignificant relative to [appellant's]
* * *
 j. The contribution of each party to the education, training, or earning ability of the other party, * * *
 * * * both parties have contributed to each other to some degree. * * * [Appellee] has made extensive sacrifices to the advancement of [appellant's] professional career.
 k. The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience * * *
 * * * it is improbable and certainly impractical that [appellee] will ever return to the practice of medicine. In order to be re-licensed [appellee] would have to re-take medical boards and complete an internship and residency. Given [appellee's] age at this time and the fact that she would be nearly 60 years old when the requirements were satisfied, this is not likely to happen. Even if the requirements were satisfied, the earning capacity of [appellee] would not be comparable to [appellant's] because of the lack of experience and time required to build a practice.
* * *
 m. The lost income production capacity of either party that resulted from that party's marital responsibilities.
 This too is an important factor in this case given [appellee's] sacrifice of her professional career which the Court finds to be a subrogation of her medical career for the benefit of the family. The Court also finds that this decision was not unilateral but that in the context of this family the parties agreed on the course of action.
 March 5, 1998 Final Divorce Decree and Judgment Entry at 4-8.
The trial court conducted a careful and thorough analysis of the evidence in light of the factors set forth in R.C.3105.18(C)(1). Upon review of the record and the trial court's specific findings relative to spousal support, we find the trial court did not abuse its discretion in awarding appellee spousal support in the amount of $10,000/month.
Appellant's third assignment of error is overruled.
 IV
In his fourth assignment of error, appellant submits the trial court abused its discretion in ordering a distributive award. Appellant explains the trial court's order failed to consider the liquidity of the parties' assets.
At oral arguments, counsel for appellant advised this Court, and counsel for appellee confirmed, appellant has paid appellee half of the distributive award as well as his spousal and child support arrearages. Counsel explained appellant made the payments through the liquidation of his pension plan. Such action suggests the issue is moot, at least to a minimum of one-half of the award.
The trial court awarded appellant title to property located in Bogota, Columbia, valued at $135,000. In light of appellant's payment of half of the award and in light of the fact appellant was awarded property which could be liquidated without tax consequences, we find no abuse of discretion in the trial court's ordering the remaining portion of the distributive award.
Appellant's fourth assignment of error is overruled.
 V
In his fifth assignment of error, appellant claims the trial court abused its discretion in ordering him to pay the marital debts and appellee's attorney fees. We shall address each in turn.
The trial court has broad discretion in establishing an allocation of marital debts and the trial court's decision will not be reversed by a reviewing court absent an abuse of discretion. Cherry v. Cherry, supra. See, also, Beriah v. Beriah
(1982), 69 Ohio St.2d 318, 319.
In the instant action, the trial court ordered the liability for the deficiency resulting from the sale of the marital residence (a total of $7,721.00) to be shared equally by the parties. However, the trial court ordered appellant to pay the remaining marital debts totaling over $40,000. The court found appellant's income earning ability had been stable for the last several years and determined his income would continue to be so. On the other hand, the court determined appellee's earning ability is relatively insignificant. Given the parties' ages, relative earnings abilities, and the equitable division of the marital property, we cannot conclude the trial court's allocation of the marital debt to appellant was an abuse of discretion.
We now turn to appellant's argument as it relates to the trial court's ordering him to pay appellee's attorney fees.
An award of attorney fees is within the discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356, 359.
R.C. 3105.18(H) provides, in pertinent part:
 (H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay
the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interest if it does not award reasonable attorney's fees.
(Emphasis added).
In the instant action, the trial court ordered appellant to pay appellee's attorney fees in excess of $19,000 as additional spousal support. Although the trial court did not make a specific finding setting forth the basis for this award, we can infer from the overall language of the divorce decree the trial court found appellant had the ability to pay and a failure to award appellee attorney fees would prevent her from fully litigating her claims. Although the better practice is for the trial court to make a specific finding relative to the issue, we cannot conclude the trial court abused its discretion in awarding attorney fees.
Appellant's fifth assignment of error is overruled.
 VI
In his sixth assignment of error, appellant argues the trial court's finding him guilty of contempt was erroneous.
A finding of contempt may be overturned only if the reviewing court determines the finding is the result of an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142.
Pursuant to the decree of divorce, appellant was ordered to pay, commencing March 1, 1998, $10,000/month in spousal support; $1,666/month in child support; $1,000/month into trust for his minor son; and to pay, within 90 days of the date of the filing of the final decree of divorce, $19,679 in appellee's attorney fees.
At the contempt hearing on June 23, 1998, the evidence established appellant earned gross wages of $138,461.52 between January 1, 1998, and June 12, 1998. Between March 1, 1998, and June 2, 1998, appellant paid a total of $20,160 in combined child and spousal support. Appellant acknowledged he had not paid any money into trust for Eduard nor had he paid any of appellee's attorney fees. It was undisputed appellant was in arrears $18,819.60 in child and spousal support.
Appellant maintains he was making a reasonable effort to comply with the court's orders while trying to meet his own basic living expenses. Appellant claims the only asset which he could utilize to satisfy these obligations was the liquidation of his retirement fund, which was prohibitive because of the taxes and penalties associated with such a withdrawal. At the contempt hearing, appellant revealed he withdrew approximately $10,000 from his retirement account to purchase furniture and furnishings for his new apartment.
Upon review of the record of the contempt hearing, we find there was sufficient evidence from which the trial court could conclude appellant was guilty of willful contempt. The evidence clearly establishes, and appellant concedes, he did not comply with the trial court's orders. Accordingly, we find the trial court's finding appellant guilty of contempt was not abuse of discretion. Furthermore, the fact appellant has now paid the obligations belies his assertion he could not pay said obligations in the time frame required by the court's order.
Appellant's sixth assignment of error is overruled.
 VII
In his final assignment of error, appellant maintains the trial court erred in sentencing him to jail without giving him a meaningful opportunity to purge the contempt. A trial court may properly make a finding of contempt under many different circumstances. Contempt is disregard for judicial authority.State v. Flinn (1982), 7 Ohio App.3d 294. Such disregard may be evidenced by conduct which shows disrespect for the administration of justice, or which otherwise impedes, obstructs, or frustrates the ability of the court to perform its lawful functions. ArthurYoung Co. v. Kelly (1990), 68 Ohio App.3d 297. Furthermore, the knowing failure to obey the lawful order of a court may be grounds for a finding of contempt. Id.
Contempt may be either direct or indirect. Direct contempt occurs in the presence of the court, while indirect contempt takes place outside its immediate presence. Indirect contempt may be either civil or criminal. Criminal and civil contempt serve different ends within the judicial system, and are governed by different rules.
Civil contempt is designed to benefit the complainant and is remedial in nature. Pugh v. Pugh (1984), 15 Ohio St.3d 136,137-142. Fines or prison sentences which are conditioned upon the performance or non-performance of an act are often examples of civil contempt. Id. An individual charged with civil contempt must be permitted to appear before the court and purge himself of contempt by demonstrating compliance with the court's order he is charged with violating. In re Purola (1991), 73 Ohio App.3d 306.
In the case of criminal contempt, there is no requirement the person charged be permitted to purge herself of the contempt.Brown v. Executive 200, Inc., (1980), 64 Ohio St.2d 250. The absence of an opportunity to purge oneself when charged with criminal contempt is appropriate because the purpose of criminal contempt is punitive. Id. Criminal contempt is usually characterized by unconditional fines or prison sentences. Id.
In determining whether a contempt charge is civil or criminal, a reviewing court may independently evaluate the circumstances attendant to the finding of contempt without deference to the trial court. Purola, supra.
In the instant case, the purpose of the order of which appellant was found in contempt was to benefit appellee and the parties' minor child. The jail sentence imposed by the trial court resulted from appellant's failure to perform an act, i.e., the payment of his spousal and child support obligations and appellee's attorney fees. Accordingly, we find the contempt is civil in nature. As such, the trial court was required to give appellant a meaningful opportunity to purge himself of the contempt.
The trial court found appellant guilty of willful contempt and sentenced him to 30 days in jail and fined him $250. June 23, 1998 Judgment Entry. The trial court stated it would "consider deferring all or part of the Jail and/or even purging the contempt upon [appellant's] compliance with all court orders and upon his payment of add'l partial Atty fees of $750." Id. Despite the language regarding purging the contempt in the trial court's judgment entry, we find the court's immediate imposition of the jail sentence did not provide appellant with a meaningful opportunity to purge the contempt. We find the trial court's failure to provide appellant with a meaningful opportunity to purge prior to the imposition of the jail sentence was erroneous.
Appellant's seventh assignment is sustained.
By: Hoffman, P.J., Reader, J. and Earle Wise, J. concur.